**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | ) | |
| **In re:** | ) | **Chapter 13** |
| | ) | **Case No. 23-11956-CJP** |
| **JAMES F. MCGUINNESS,** | ) | |
| | ) | |
| **Debtor** | ) | |
| | ) | |

### MEMORANDUM OF DECISION AND ORDER
### ON OBJECTION TO CLAIM OF VICTORIA TRUCKING, LLC

After an evidentiary hearing on the *Debtor's Objection to the Amended Proof of Claim of Victoria Trucking[,] LLC (Claim No. 6-2)* (the "Objection") at which the debtor, James F. McGuinness, and the administrator and agent of Victoria Trucking, Inc., formerly known as the claimant Victoria Trucking, LLC ("Victoria Trucking"), Monica Bermejo, testified and the Court admitted thirteen exhibits, including the trial affidavits of McGuinness (Ex. 13) and Bermejo (Ex. 12) – some portions of which were stricken to reflect evidentiary rulings after objections, and upon the consideration of the arguments of counsel, including post-trial submissions, and the record of this case, I sustain the Objection to Claim No. 6-2 (the "Claim") in part and overrule it in part for the reasons that follow.[1]

---

[1] This Memorandum of Decision and Order sets forth my findings of fact and rulings of law as contemplated by Fed. R. Bankr. P. 7052, made applicable to this contested matter by Fed. R. Bankr. P. 9014. Any findings of fact that are, in whole or part, rulings of law shall be considered as such and vice versa. While I may cite to specific supporting evidence in the record, my findings are often supported by additional evidence in the record that I have considered, and I do not intend to limit support for my findings to the cited portion of the record. Further, to the extent that I reference testimony or other evidence that supports my rulings, I have credited that testimony or other evidence even if I have not made an express finding. Where I have referenced testimony or other evidence that does not support my rulings, I have weighed that evidence, but it has not overcome the weight that I have given to other evidence in the record.

I.   Background

Victoria Trucking asserts that the Debtor owes it an unsecured debt of $67,439.64,

consisting of $50,521.34[2] for an unpaid invoice for hauling and disposal services and $16,918.30

for legal fees and expenses under Mass. Gen. Laws ch. 93A.  *See* Claim, Ex. 10.  Victoria

Trucking alleges that the Debtor: (i) solicited Victoria Trucking for a proposal to haul and

dispose of certain asbestos waste and other debris (the "Taunton job") from a property at 4

Spring Lane, Taunton, Massachusetts (the "Taunton property"), (ii) approved a quote from

Victoria Trucking, (iii) engaged the services of Victoria Trucking, and (iv) then failed to pay or

dispute liability for a second invoice issued by Victoria Trucking.  *See* Victoria Trucking Post-

trial Br. [ECF No. 350], 1-2.  Victoria Trucking also contends that the Debtor engaged in unfair

business practices by, among other things, operating under a d/b/a, Precision Services, without

registering that as a trade name, giving a false address to Victoria Trucking for billing purposes,

and delaying and defaulting on payment for services by Victoria Trucking.  *See id.* at 3-4.

Victoria Trucking asks that this Court find that the Debtor violated Mass. Gen. Laws ch. 93A and

that it be awarded attorneys' fees and expenses as part of its Claim.  *See* Claim, Ex. 10.

The Debtor denies owing Victoria Trucking any amount and contends that the owner of

the Taunton property, Antonio Bairos or a trust controlled by Bairos, is liable to pay Victoria

Trucking for its services.  *See* Obj. [ECF No. 111], ¶ 12.  The Debtor does not dispute that

Victoria Trucking performed the services or is owed $50,521.34 on account of those services.

*See id.* at ¶ 11.  The crux of the Objection is the Debtor's contention that he made it clear to

Victoria Trucking that the property owner would be responsible for charges.  The Debtor testified

that he had a similar prior arrangement with Victoria Trucking at a job in Fitchburg,

---

[2] The amount appears to have been determined after crediting a small overpayment on an earlier invoice. Exs. 3-5.

Massachusetts (the "Fitchburg job") and he claims he explained to Bermejo, who was his contact at Victoria Trucking, at the inception of the Taunton job that the payment arrangements would be the same as the Fitchburg job – the property owner would be responsible for payments to Victoria Trucking.

## II.   Burden of Proof

The filing of a proof of claim and the allowance of such claim are governed by 11 U.S.C. §§ 501 and 502.[3]  A claim "filed in accordance with [the Federal Rules of Bankruptcy Procedure] is prima facie evidence of the claim's validity and amount."  Fed. R. Bankr. P. 3001(f).  A party in interest may object to a proof of claim pursuant to § 502(a), and "the court 'shall allow' a claim unless one of the nine exceptions enumerated in § 502(b) applies."  *Am. Express Bank, FSB v. Askenaizer (In re Plourde)*, 418 B.R. 495, 502–03 (B.A.P. 1st Cir. 2009) (quoting § 502(b)).  An objection does not overcome the presumption in Fed. R. Bankr. P. 3001(f) "unless the objection is supported by *substantial evidence.*"  *Juniper Dev. Grp. v. Kahn (In re Hemingway Transp., Inc.)*, 993 F.2d 915, 925 (1st Cir.1993) (emphasis in original) (citations omitted).  The "substantial evidence" that the objecting party must produce in order to rebut the claim's prima facie validity is "evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency."  *In re Everett*, No. 10-19457 (FJB), 2013 WL 3757283, at *5 (Bankr. D. Mass. July 15, 2013) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)).  This means that an "objector must produce evidence equal in force to the prima facie case."  *Tracey v. United States (In re Tracey)*, 394 B.R. 635, 639 (B.A.P. 1st Cir. 2008) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d at 173).  If the evidence proffered by the objecting party is substantial, the burden shifts to the claimant to prove its claim by a

---

[3] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code" or "Code").

3

preponderance of the evidence. *See id.* (citing *In re Organogenesis, Inc.*, 316 B.R. 574, 583 (Bankr. D. Mass. 2004)); *see also In re Hemingway Transp.*, 993 F.2d at 925 ("Once the [objecting party] manages the initial burden of producing substantial evidence . . . the ultimate risk of nonpersuasion as to the allowability of the claim resides with the party asserting the claim.").

The Debtor has proffered substantial evidence in support of the Objection by testifying to communications and a course of dealing with Victoria Trucking that, if found to be true, could support the Objection. As such, Victoria Trucking has the burden to prove its Claim by a preponderance of the evidence.

III.   Findings of Fact and Conclusions of Law

After considering the evidence presented at trial, the credibility of each witness, and the arguments of counsel, I make the following findings of fact and conclusions of law:

1.      Victoria Trucking is a company that provides services transporting waste and debris from demolition and other sites to transfer stations or landfills. *Aff. of Monica Bermejo of Victoria Trucking, Inc.* (as modified on the record, Ex. 12) (the "Bermejo Aff."), ¶ 2. Victoria Trucking does not load the materials into the trucks. *See id.* ¶ 3. Generally, the contractor or landowner is responsible to arrange for heavy equipment and licensed professionals to load the waste and debris into Victoria Trucking's trucks. The trucks are open on top for loading. *See id.* The loads are then sealed with liners by professionals who are hired by the owner or contractor. *See id.* at ¶ 4.

2.      Bermejo is the administrator of Victoria Trucking, a company owned by her relatives. *See id.* at ¶ 1. At all relevant times she was responsible for the operations, billing and collections, and communications for Victoria Trucking and was the sole point of contact for the

Debtor. *See id.* at ¶¶ 8-10. In the ordinary course of the business of Victoria Trucking, Bermejo negotiates the engagement and terms of service with property owners or contractors, then coordinates the scheduling of trucks and other issues with people designated at the site. In the ordinary course of its business, Victoria Trucking submits a written quote and requires that the responsible party "accept" the quote by signing the quote before it will begin hauling.

3.      The Debtor has owned a number of construction, demolition, excavation, and equipment leasing businesses and has 25 years of experience in that industry. *See Debtor's Direct Test. by Aff. for Evidentiary Hr'g Regarding Debtor's Obj. to Creditor Victoria Trucking LLC Proof of Claim (No. 6)* (as modified on the record, Ex. 13) (the "Debtor Aff."), ¶ 1. He operates heavy equipment and has served as a construction supervisor in relation to his businesses. *See id.*

4.      In early December of 2022, the Debtor contacted Bermejo and requested that Victoria Trucking provide a "quote" for pricing for the Taunton job. *See id* at ¶ 6. On December 21, 2022, Bermejo provided a written quote to Debtor. *See* Exs. 1 and 2; Bermejo Aff. ¶ 16. The quote included the price per ton and stated a 25-ton minimum and the cost for liner options. *See* Ex. 1; Bermejo Aff. ¶ 17. The quote did not include a total price for the job because it had not been established how many loads would need to be removed on the Taunton job, although the Debtor estimated between 7-10 loads. *See* Bermejo Aff. ¶ 18.

5.      In Bermejo's experience, it was common for customers not to know the exact number of loads that would be required. *See id.* at ¶ 19. It is her practice to tell customers that they will be charged for the total number of loads based on the quoted pricing. *See id.* Bermejo said in an email to the Debtor "I want to get this signed and returned to me before starting the project." Ex. 2. The quote was signed and returned by McGuinness. I discuss this finding

further below, but I credit Bermejo's testimony as supported by inferences drawn from the email exchanges.

6.      Later in the day on December 21, 2022, Bermejo emailed the Debtor and asked "what is the company name we will be working for." Ex. 2.  The Debtor responded approximately eight minutes later "Precision Services." *Id.*  Ultimately, the Debtor made arrangements with Bermejo for Victoria Trucking to send trucks to the Taunton job to provide hauling services.

7.      The Debtor testified that he had previously worked with Bermejo and Victoria Trucking on the Fitchburg job, where he arranged for hauling services, but the property owner on that job, Bob Anson, was responsible to pay Victoria Trucking.[4]  *See* Debtor Aff. ¶¶ 1-3.  The Debtor further testified that it was his "common practice" to have the owner be responsible to pay. *See id.*  The Debtor provided Anson with Bermejo's contact information.  *See id.* The Debtor testified that Anson and Bermejo spoke and that Anson paid by credit card.  *See id.*

8.      Bermejo testified that she had spoken with a "Jimmy" to coordinate the loading of trucks on a regular basis in connection with the Fitchburg job, as had been directed by Anson. She testified that she was not aware that the Debtor was the "Jimmy" that was working on the Fitchburg job until she saw his trial affidavit.  She stated that Anson had arranged for the services of Victoria Trucking and approved the quote. *See id.*  She also testified that Victoria Trucking has never accepted a credit card payment for services because of the fee deducted from such payment.

9.      The Debtor testified that he explicitly informed Bermejo that Antonio Bairos or

_____

[4] Anson's name seemed to be pronounced several different ways during testimony, but at all times the reference was clear.

the owner of the Taunton property would be responsible for payment to Victoria Trucking for the Taunton job, as they had agreed on the Fitchburg job. Debtor Aff. ¶ 7. Bermejo denies having communications with anyone where she was told that any party other than Precision Services would be responsible to pay Victoria Trucking on the Taunton job. She also denies making any arrangements with the Debtor on the Fitchburg job or knowing at the time that the Debtor was involved with the Fitchburg job.

10.     It is not necessary for me to make findings on whether Bermejo knew or should have known that the "Jimmy" working on the Fitchburg job was the Debtor because I credit Bermejo's testimony that the Debtor did not inform her that the property owner would be responsible for payment on the Taunton job.[5] The Debtor was evasive at times in his testimony. He asserted that there was no purchase order or contract, but did not offer any credible explanation for the email exchange identifying Precision Services as the company for which Victoria Trucking was "working." He also did not admit that the signed quote had his signature. He was not asked to identify the "JM" initials near a strikeout, but Exhibit 1 shows those initials and a scrawled signature delivered to Victoria Trucking consistent with the requirement expressed in email exchanges between the Debtor and Bermejo.

11.     The Debtor stated that the property owner on the Taunton job had a language barrier, which might support an inference that the Debtor was coordinating for or acting as an agent for the owner, but that was not made clear to Bermejo. No documentary evidence supports the Debtor's testimony or that the Debtor had authority to bind the owner or that the identity of the owner as "principal" was communicated to Victoria Trucking. "It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to

---

[5] In testimony and during these proceedings, the Debtor has been referred to as James, "Jamie," and "Jimmy."

disclose not only that he is acting in a representative capacity, but also the identity of his principal." *Atlantic Salmon A/S v. Curran*, 32 Mass. App. Ct. 488, 492, 591 N.E.2d 206, 208 (1992) (collecting cases).

12.     While the Debtor testified he told Bermejo he was not responsible for payment, allegedly referring back to an initial conversation, no documentary evidence supports this testimony. *See* Debtor Aff. ¶ 7.  I credit Bermejo's testimony that the Debtor never stated to her that the owner was responsible for payment, that the Debtor was acting only in a capacity as agent for the "owner," or that Bairos was the owner who would be responsible for payment – either before or after services were provided or invoices were issued.  Notably, the owner did make the one payment to Victoria Trucking by a "starter" check that did not identify the maker but was signed by Bairos.  Bermejo Aff., ¶ 30.  Bermejo credibly testified that she was aware there was no business name on the check, but that her focus was not on who signed the check. This did not cause her to question her understanding that Precision Services (the Debtor) was obligated to pay for the services of Victoria Trucking.  Bermejo had no contact with Bairos at any time, and unlike what the Debtor alleges was his process in relation to the Fitchburg job, the "owner" did not speak with, engage, or authorize Victoria Trucking.  Other than his testimony, the Debtor provided no evidence that he was authorized to act as agent for Bairos and bind Bairos to any contract with Victoria Trucking.

13.     A contract is formed when there is an "agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Situation Mgmt. Sys., Inc. v. Malouf, Inc.,* 430 Mass. 875, 878, 724 N.E.2d 699, 703 (2000).  "[C]ontract formation requires a bargain in which there is a manifestation of mutual assent to the exchange." *I & R Mech., Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct.

8

452, 454-55, 817 N.E.2d 799, 802 (2004); *see also* Restatement (Second) of Contracts § 17(1) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."). Manifestation of mutual assent, "otherwise known as a meeting of the minds, occurs when there is an offer by one [party] and acceptance of it by the other." *Sea Breeze Estates, LLC v. Jarema*, 94 Mass. App. Ct. 210, 215, 113 N.E.3d 355, 360 (2018) (quotations and citation omitted); *see also* Restatement (Second) of Contracts § 22(1) ("The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties.").

14.     "An offer is a 'manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Bourque v. FDIC*, 42 F.3d 704, 709 (1st Cir.1994) (quoting Restatement (Second) of Contracts § 24, at 71 (1981)). Requests for a price quote "generally do not constitute offers but are instead usually considered requests for offers or invitations to negotiate." *I & R Mech., Inc.*, 62 Mass. App. Ct. at 455, 817 N.E.2d at 802. An offer is accepted when "the offeree assents to the offer in the terms in which it is made." *Sea Breeze Estates, LLC*, 94 Mass. App. Ct. at 215, 113 N.E.3d at 361. Consideration is also required to form a contract, which is satisfied when there is a "bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor." *Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 201 (1st Cir. 2004) (quoting *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 142 (1st Cir. 1998)).

15.     All of the requirements to form a valid and enforceable contract between the Debtor and Victoria Trucking are met in the present case. The Debtor accepted the quote and,

9

while there were refinements, there was a meeting of the minds that Victoria Trucking would provide services at an agreed price, which it did. The Debtor only disputes that he (as opposed to the owner) was the contracting party responsible for payment. I find that the Debtor was the contracting party.

16.     Massachusetts courts are hesitant to find an implied contract between a subcontractor and owner and find that the "'contracting party must look for payment to the one to whom credit was extended when the work was done, that is, the one who was expected to pay and who in fact expected to pay or as a reasonable man should have expected to pay.'" *Mike Glynn & Co. v. Hy-Brasil Rests., Inc.,* 75 Mass. App. Ct. 322, 327, 914 N.E.2d 103, 107 (2009) (quoting *LaChance v. Rigali,* 325 Mass. 425, 427, 91 N.E.2d 204, 205 (1950)). Further, under Massachusetts law, "in absence of lien perfected under [Mass. Gen. Laws ch. 254], an owner who enters into a general contract for improvements on real property is not ordinarily liable to subcontractors whose sole contractual arrangements are with the general contractor." *Evans v. Multicon Const. Corp.,* 30 Mass. App. Ct. 728, 740, 574 N.E.2d 395, 401 (1991). I have found that the evidence does not support a finding that the Debtor acted as a disclosed agent of the owner of the Taunton property in contracting with Victoria Trucking.

17.     In January 2023, Victoria Trucking performed hauling services at the Taunton job at the direction of the Debtor. The charges for Victoria Trucking's work for the Debtor include $66,664.71 for materials and services provided on or about January 9, 2023 and January 10, 2023 and $50,856.63 for materials and services provided on or about January 16, 2023 and January 19, 2023. *See* Exs. 3-4. Victoria Trucking issued invoices to "Precision Services" numbered 3752 and 3756 reflecting these charges. *See id.* The Debtor did not object to the invoices directed to Precision Services.

10

18.     At the direction of the Debtor, Bairos made a payment to Victoria Trucking in the amount of $67,000.00.  *See* Ex. 5.  The balance owed to Victoria Trucking is $50,521.34.  *See* Bermejo Aff. ¶ 31.

19.     Attempting to collect the outstanding balance, Bermejo visited the business address given by Debtor.  Bermejo learned that the address was not a business address or residence for Debtor.  The Debtor testified that he was using that address because it was a home office of a friend and that his friend had an assistant who could assist the Debtor.  He testified that because of his divorce he was using his friend's address.

20.     When Bermejo texted the Debtor and requested payment, the Debtor indicated that he required the original invoices and Victoria Trucking's shipment records prior to payment being issued.  After Victoria Trucking provided the requested documentation, the Debtor ceased communications with Victoria Trucking.  *See* Ex. 6.  I do not credit the Debtor's testimony that he had phone conversations with Bermejo in response to her efforts.

21.     Victoria Trucking has proven by a preponderance of the evidence that the Debtor engaged Victoria Trucking to provide services and that the Debtor failed to pay a balance owed of $50,521.34.  I find that the Debtor was not acting as agent for Bairos or the "owner" of the Taunton property, and that Victoria Trucking had no actual knowledge of the purported agency relationship between the Debtor and Bairos or the "owner."  As stated by one court:

> Actual knowledge is the test. *See Saco Dairy Co. v. Norton*, 140 Me. 204, 207, 35 A.2d 857 (1944); *Stevens v. Graf, supra*; *Cobb v. Knapp*, 71 N.Y. 348, 352 (1877); *Howell v. Smith, supra*; *Anderson v. Smith, supra*; *A to Z Rental Center v. Burris, supra*. "The duty rests upon the agent, if he would avoid personal liability, to disclose his agency, and not upon others to discover it. It is not, therefore, enough that the other party has the means of ascertaining the name of the principal; the agent must either bring to him actual knowledge or, what is the same thing, that which to a reasonable man is equivalent to knowledge or the agent will be bound. There is no

> hardship to the agent in this rule, as he always has it in his power to relieve himself from personal liability by fully disclosing his principal and contracting only in the latter's name. If he does not do this, it may well be presumed that he intended to make himself personally responsible." 1 Mechem on Agency § 1413 (2d ed. 1914).

*Atlantic Salmon A/S*, 32 Mass. App. Ct. at 493, 591 N.E.2d at 209. While I understand that the Debtor asserts that he intended to have Victoria Trucking contract with the "owner," he did not do what was necessary to convey that to Victoria Trucking.

22. Regarding the portion of the Claim seeking attorneys' fees and a finding of unfair and deceptive business practices, Victoria Trucking has not met its burden to demonstrate that the Debtor engaged in unfair and deceptive business practices under Mass. Gen. Laws ch. 93A.

23. Section 11 of Mass. Gen. Laws ch. 93A states in relevant part that: "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . . . may . . . bring an action . . . for damages and such equitable relief . . . as the court deems to be necessary and proper." Mass. Gen. Laws ch. 93A, § 11. It is well established that "'a practice or act [is] unfair under [Mass. Gen. Laws ch.] 93A, § 2, if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.'" *Morrison v. Toys "R" Us, Inc.*, 441 Mass. 451, 457, 806 N.E.2d 388, 392 (2004) (quoting *Heller Fin. v. Ins. Co. of N. Am.*, 410 Mass. 400, 573 N.E.2d 8 (1991)). The First Circuit has held that "[C]hapter 93A is intended exclusively for egregious conduct." *AmeriFirst Bank v. TJX Cos. (In re TJX Cos. Retail Sec. Breach Litig.)*, 564 F.3d 489, 497 (1st Cir. 2009). "Moreover, the SJC has repeatedly held that 'mere negligence,' standing

12

alone, is not sufficient for a violation of ch. 93A—something more is required." *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014). However, negligent conduct may be so extreme or egregious as to constitute a violation of § 11 of Chapter 93A as well and, thus, the scope of the conduct must be examined. *See, e.g., Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 62, 809 N.E.2d 1017, 1032 (2004).

24. I do not find the evidence sufficient to conclude that the Debtor intended at the time he engaged and received services from Victoria Trucking to avoid payment or create ambiguity from which he would benefit. Because I have found that the Debtor did not make representations that he was merely an agent for Bairos and authorized to contract for Bairos in his role as contractor, I do not find a misrepresentation that would support a finding of unfair and deceptive business practices. While I considered Victoria Trucking's allegations that the Debtor used a "d/b/a," gave addresses that were not his home or true business address, and ceased communications with Victoria Trucking when Victoria Trucking was attempting to collect its debt, I do not find that there is enough credible evidence to support a finding of liability under Mass. Gen. Laws ch. 93A.

IV. Conclusion

For the reasons stated, the Objection to the Claim is overruled in part and sustained in part. Victoria Trucking shall have an allowed general unsecured claim in the amount of $50,521.34.

Dated: March 16, 2026                      By the Court,

_____
Christopher J. Panos
United States Bankruptcy Judge

13